IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNILOC USA, INC. and UNILOC LUXEMBOURG S.A., | § § § | |
| Plaintiffs, | § § | |
| | § | CIVIL ACTION NO. 6:14-CV-00625 |
| v. | § § | **JURY TRIAL DEMANDED** |
| MERIDIANEMR, INC., HEALTHTRONICS, INC., ENDO HEALTH SOLUTIONS INC., and ALTARIS CAPITAL PARTNERS, LLC | § § § § | |
| Defendants. | § § | |

**DEFENDANTS HEALTHTRONICS, INC., MERIDIANEMR, INC., AND ALTARIS
CAPITAL PARTNERS, LLC'S JOINT MOTION TO DISMISS PLAINTIFFS'
COMPLAINT UNDER RULE 12(b)(6) FOR FAILURE TO ALLEGE INFRINGEMENT
OF A PATENTABLE CLAIM UNDER 35 U.S.C. § 101**

# <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

I.      INTRODUCTION ...................................................................................... 1

II.     LEGAL STANDARDS .............................................................................. 3

    1.      Patent Eligibility under 35 U.S.C. § 101 ............................................ 3

    2.      Motion To Dismiss Under Fed. R. Civ. P. 12(b)(6) ........................... 4

    3.      Invalidity Under § 101 is Regularly Decided at the Pleading Stage, Prior to Claim Construction ................................................................ 5

III.    ARGUMENT ............................................................................................. 6

    1.      The Court Should Dismiss Claim 1 of the '526 Patent for Failure to State a Claim ....................................................................................... 6

        A.      Claim 1 of the '526 Patent Claims a Method for the Abstract Idea of Organizing Medical Data in a Hierarchy................................. 6

        B.      The Language of Claim 1 Does Not Meaningfully Limit the Abstract Idea to a Concrete Application.................................... 9

        C.      Claim 1 Fails The Machine-or-Transformation Test .............................. 11

    2.      The Court Should Dismiss Claims 2-25 of the '526 Patent for Failure to State a Claim ..................................................................... 13

    3.      The Court Should Dismiss Claim 6 of the '451 Patent for Failure to State a Claim..................................................................................... 14

        A.      Claim 6 of the '451 Patent Claims a Method for the Abstract Idea of Storing User-Defined Formulas.......................................... 14

        B.      The Language of Claim 6 Does Not Meaningfully Limit the Abstract Idea to a Concrete Application.................................... 16

    4.      The Court Should Dismiss Claims 1-5 and 7-14 of the '451 Patent for Failure to State a Claim................................................................ 17

IV.     CONCLUSION ....................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013)........................................................................3

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014) .............................................1, 3, 4, 8, 9, 10, 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................4

*Bancorp Services, LLC v. Sun Life Assur. Co. of Canada (U.S.)*,
  687 F.3d 1266 (Fed. Cir. 2012)..........................................................5, 11, 12

*Bilski v. Kappos*,
  130 S. Ct. 3218 (2010)..........................................................1, 3, 4, 5, 11, 16

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*,
  No. 6:12-CV-674, 2014 WL923280, at *2 (E.D. Tex. Jan. 21, 2014)............4, 5, 6, 11, 12, 16

*Cyberfone Systems LLC v. CNN Interactive Group, Inc. et al*,
  2014 WL 718153 (Fed. Cir. 2014).............................................................10, 16

*Dealertrack, Inc. v. Huber*,
  674 F.3d 1315 (Fed. Cir. 2012)...........................................................3, 6, 12

*Diamond v. Chakrabarty*,
  447 U.S. 303 (1980)........................................................................................3

*Diamond v. Diehr*,
  450 U.S. 175 (1981)........................................................................................3

*Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014)....................................................................2, 8

*Garrett v. Celanese Corp.*,
  No. 3:02-CV-1485-K, 2003 WL 22234917 (N.D. Tex. Aug. 28, 2003), *aff'd* 102 Fed.
  Appx. 387 (5th Cir. 2004).............................................................................4

*Gottschalk v. Benson*,
  409 U.S. 63 (1972) (J. Stevens concurring).........................................3, 9, 11, 16

*Guidry v. Am. Public Life Ins. Co.*,
  512 F.3d 177 (5th Cir. 2007) .......................................................................4, 5

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012)..................................................................................1, 2, 4, 9, 10, 11, 16

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    2012 WL 3985118 (N.D. Cal. Sept. 11, 2012) .......................................................................12

*Parker v. Flook*,
    437 U.S. 584 (1978)..................................................................................................................4, 9

*Rockstar Consortium US LP, et al. v. ASUSTeK Computer, Inc. et al.*,
    No. 2:13-CV-00894-JRG, Dkt. No. 106, at 6 (E.D. Tex., May 15, 2014)..............................5

*UbiComm, LLC v. Zappos IP, Inc.*,
    No. 13-cv-1029-RGA, 2013 WL 6019203 (D. Del. Nov. 13, 2013) .......................................5

*Uniloc U.S.A., Inc. et al. v. Rackspace Hosting, Inc. et al.*,
    No. 6:12-cv-00375, Dkt. No. 38, at 3, 9 (E.D. Tex. Mar. 27, 2013) .......................................5

**STATUTES**

35 U.S.C. § 101 .......................................................................1, 2, 3, 5, 6, 8, 9, 10, 13, 14, 17, 18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(c) ......................................................................................................................5

Federal Rule of Civil Procedure 12(b)(6) .........................................................................1, 2, 4, 5

Local Rule CV-5(a)(3).................................................................................................................20

Defendants HealthTronics, Inc. ("HealthTronics"), meridianEMR, Inc. ("meridianEMR"), and Altaris Capital Partners, LLC ("Altaris") (collectively, "Defendants") hereby move this Court to dismiss the Complaint filed by Uniloc USA, Inc. and Uniloc Luxembourg S.A. (collectively, "Uniloc" or "Plaintiffs") in the above-captioned case under Federal Rule of Civil Procedure 12(b)(6) because the Asserted Patents attempt to cover abstract ideas which, as a matter of law, are ineligible as patentable subject matter under 35 U.S.C. § 101.[1]  More specifically, Plaintiffs' Complaint alleges infringement of patents that cover nothing more than (1) organizing medical information data and (2) storing user-defined formulas for medical data using general purpose computers.  The Complaint therefore fails to state a claim upon which relief can be granted, and should be dismissed.

## I.    INTRODUCTION

On July 18, 2014, Plaintiffs filed the above-captioned lawsuit against Defendants alleging infringement of U.S. Patents Nos. 5,682,526 ("the '526 Patent")[2], and 5,715,451 ("the '451 Patent").[3]  The '526 and '451 Patents are collectively referred to herein as the "Asserted Patents."

The Supreme Court has ruled time and again that "abstract ideas" may not be removed from the public domain and owned as private property under our patent laws.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012); *Bilski v. Kappos*, 130 S. Ct. 3218 (2010).  Such fundamental truths are "part of the storehouse of knowledge of all men ... free to all men and reserved exclusively to none."  *Bilski*, 130 S. Ct. at 3225 (quoting *Funk Brothers Seed Co. v. Kalo Inoculant Co.*, 333

---

[1] Defendants note that this motion is substantively identical to the motion filed by other defendants in this pending matter on September 30, 2014.  *See Uniloc USA, Inc. v. E-MDs, Inc.*, Case No. 6:14-cv-00625-MHS, Doc. No. 73 (E.D. Tex.).

[2] The '526 Patent was attached to the filed Complaint as Exhibit A.

[3] The '451 Patent was attached to the filed Complaint as Exhibit B.

U.S. 127, 130 (1948)); *see Mayo*, 132 S. Ct. at 1301.  The two Asserted Patents in this case violate this basic tenet of U.S. patent law.

Even a cursory review of the Asserted Patents compels the conclusion that the United States Patent and Trademark Office ("PTO") erred in issuing the Asserted Patents.  These patents improperly attempt to cover the abstract and well-known ideas of organizing and storing information.  For example, the claims of the '526 Patent are directed to "a method and system for flexibly organizing, recording, and displaying medical patient care information."  '526 Patent at 3:15-16.  This abstract process of organizing medical information has been performed for centuries by human beings simply by maintaining physical records of patient care information.  Further, the Federal Circuit has explicitly stated that the concept of electronically organizing data constitutes a patent-ineligible abstract idea.  *Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014).  With respect to the '451 Patent, the claims are directed to "a method and system for constructing formulae for processing medical data."  '451 Patent at 1:42-43.  The concept of storing user-defined formulas is an abstract idea which was fundamental even to the earliest known computers.

The Asserted Patents, on their face, therefore fail to pass the threshold requirement of 35 U.S.C. § 101 that a patent claim patent-eligible subject matter.  Defendants move for dismissal of this action under Federal Rule of Civil Procedure 12(b)(6) because the claims of the '526 Patent and '451 Patents[4] are drawn to abstract ideas not eligible for patent protection as a matter of law.

---

[4] Defendants note that Plaintiffs' Complaint alleges infringement of "at least Claim 1" of the '526 Patent and "at least Claim 6" of the '451 Patent.  Accordingly, Defendants' analysis is principally directed to those claims.  For purposes of this motion, the independent claims of each Asserted Patent are substantially similar to those claims (respectively), and should be invalidated for the same reasons. *See* Section III, below.  Further, the dependent claims fail to add any limitations that would render the claims valid. Thus Claim 1 of the '526 Patent and Claim 6 of the '451 Patent should be considered exemplary of the other claims of the Asserted Patents. To the extent necessary, Defendants reserve the right to amend their arguments to specifically address other claims.

Defendants respectfully request the Court address these issues now, early in the proceedings before the parties are required to proceed with time-consuming and expensive discovery. Plaintiffs' Complaint is fatally flawed and should therefore be dismissed.

## II.　LEGAL STANDARDS

### 1.　Patent Eligibility under 35 U.S.C. § 101

Whether a claim recites patent-eligible subject matter is a question of law. *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012). Section 101 of the Patent Act defines the four categories of inventions or discoveries that are eligible for patent protection:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. § 101 (2006). The Supreme Court has recognized three exceptions to this domain of patent eligible subject matter: "laws of nature, physical phenomena, and abstract ideas." *Alice*, 134 S. Ct. at 2354; *Bilski*, 130 S. Ct. at 3225; *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980). Abstract ideas are ineligible for patent protection because "they are the basic tools of scientific and technological work." *Bilski*, 130 S. Ct. at 3255 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972) (J. Stevens concurring)). A monopoly over such ideas would improperly preempt use of such ideas in all fields. *See Bilski*, 130 S. Ct. at 3231.

Patent eligibility is evaluated from the perspective of the claims. *Dealertrack*, 674 F.3d at 1334 ("In considering patent eligibility under § 101, one must focus on the claims."). In determining whether a claim is directed to eligible subject matter, courts consider the claim as a whole rather than evaluating elements separately. *Diamond v. Diehr*, 450 U.S. 175, 188 (1981). Simply taking an abstract idea and adding steps—or breaking it into steps—that involve "well-understood," "routine," or "conventional" activity contributes nothing inventive to an otherwise

abstract idea, leaving only the abstract idea as the subject matter of the claims. *See Alice*, 134 S. Ct. at 2357 (discussing *Mayo*, 132 S. Ct. at 1294, 1299); *see also Parker v. Flook*, 437 U.S. 584, 590 (1978).

Assessing whether a claim covers an abstract idea or its application involves two steps. First, the Court identifies what, if any, abstract idea is involved in the claim; and second, "whether meaningful limitations in the claim make it clear that the claim is not to the abstract idea itself, but to a non-routine, and specific application of that idea." *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, No. 6:12-CV-674, 2014 WL923280, at *2 (E.D. Tex. Jan. 21, 2014) (quoting *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1349 n.2 (Fed. Cir. 2013)); *see also Alice*, 134 S. Ct. at 2355 (discussing *Mayo*, 132 S. Ct. at 1294-1303).

Furthermore, courts may look to the machine-or-transformation test as "an investigative tool" in assessing patent eligibility of method claims. *Bilski*, 130 S. Ct. at 3227. Under this test, a process is patentable if "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Id*. at 3225-26.

### 2. Motion To Dismiss Under FED. R. CIV. P. 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6) tests the legal sufficiency of claims alleged in a complaint. *Garrett v. Celanese Corp.*, No. 3:02-CV-1485-K, 2003 WL 22234917 at *1 (N.D. Tex. Aug. 28, 2003), *aff'd* 102 Fed. Appx. 387 (5th Cir. 2004). In evaluating a Rule 12(b)(6) motion, the ultimate question is whether the plaintiff's complaint, when viewed in a light most favorable to the plaintiff, states a valid cause of action. *Id.* The court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Guidry v. Am. Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). However, "the tenet that a court must accept as true all of the allegations contained in a Complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 3.    Invalidity Under § 101 is Regularly Decided at the Pleading Stage, Prior to Claim Construction

Whether a patent claims patent-eligible subject matter under 35 U.S.C. § 101 is a question of law for the Court to decide. *See Rockstar Consortium US LP, et al. v. ASUSTeK Computer, Inc. et al.*, No. 2:13-CV-00894-JRG, Dkt. No. 106, at 6 (E.D. Tex., May 15, 2014) (citing *Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012)).   Courts routinely dismiss patent infringement complaints on § 101 grounds, at the pleading stage, in situations where the patent claims can only be plausibly read to recite ineligible subject matter. *See Clear With Computers*, 2014 WL 923280, at *6-7 (granting Fed. R. Civ. P. 12(c)[5] motion for judgment on the pleadings on patent ineligibility under § 101); *Uniloc U.S.A., Inc. et al. v. Rackspace Hosting, Inc. et al.*, No. 6:12-cv-00375, Dkt. No. 38, at 3, 9 (E.D. Tex. Mar. 27, 2013) (granting motion to dismiss pursuant to 12(b)(6) for failure to allege infringement of a patentable claim under § 101; noting that "[s]ection 101 questions of patentability may be resolved before claim construction"); *UbiComm, LLC v. Zappos IP, Inc.*, No. 13-cv-1029-RGA, 2013 WL 6019203, at *6 (D. Del. Nov. 13, 2013) ("[d]ismissal under 12(b)(6) is appropriate in this case").

Courts also consistently rule on issues of patent-eligible subject matter under § 101 prior to claim construction. *See Bilski*, 130 S. Ct. at 3231; *see also Bancorp Services, LLC v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("claim construction is not an inviolable prerequisite to a validity determination under § 101").   Recently, this Court affirmed that a *Markman* hearing is not necessary to invalidate claims under § 101 at this stage and rejecting the plaintiff's argument that a motion for judgment on the pleadings was premature

---

[5] The standard for deciding a Rule 12(c) motion for judgment on the pleadings is the same as that for deciding a Rule 12(b)(6) motion to dismiss. *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

prior to formal claim construction and granting the defendants' motion without a claim construction hearing. *Clear with Computers*, 2014 WL 923280 at *6-7.

## III.    ARGUMENT

### 1.    The Court Should Dismiss Claim 1 of the '526 Patent for Failure to State a Claim[6]

Claim 1 of the '526 Patent covers an abstract idea and thus falls outside the bounds of patentable subject matter under § 101.  Further, Claim 1 does not contain any meaningful limitations that restrict the abstractness of the claimed method to an actual concrete application. Finally, Claim 1 fails to satisfy the standard of the "machine or transformation" test.

#### A.    Claim 1 of the '526 Patent Claims a Method for the Abstract Idea of Organizing Medical Data in a Hierarchy

The Claims of the '526 Patent are directed to "a method and system for flexibly organizing, recording, and displaying medical patient care information" '526 Patent at 3:15-16. Ultimately, it is the asserted claims that inform the ensuing inquiry under § 101. *Dealertrack*, 674 F.3d at 1334 ("In considering patent eligibility under § 101, one must focus on the claims."). For ease of reference, an exemplary claim from the '526 Patent is reproduced below (emphasis added):

| **'526 Patent, Exemplary Claim 1** | |
|---|---|
| Claim 1 | A method in a computer system for designing, under the control of a user, a patient information hierarchy, the hierarchy containing a plurality of parameters including a linked-from parameter having a linked-from possible result value that is linked to one or more linked-to parameters, the method comprising the steps of: |
| | (a) *receiving an instruction* from the user to create a new parameter |

---

[6] As noted above, in footnote 3, for purposes of this motion, the independent claims of the '526 Patent are substantially similar to Claim 1, and should be invalidated for the same reasons.   Further, the dependent claims fail to add any limitations that would render the claims valid. Accordingly, Defendants treat Claim 1 as exemplary of the other claims of the '526 Patent.

| '526 Patent, Exemplary Claim 1 |
|---|
| within the patient information hierarchy;<br><br>    (b) in response to step (a), *creating a new parameter* within the patient information hierarchy;<br><br>    (c) *receiving an instruction* from the user to specify a plurality of indicated possible result values for the new parameter;<br><br>    (d) in response to step (c), *specifying the indicated possible result values* as possible result values of the new parameter;<br><br>    (e) *receiving an instruction* from the user to link an indicated linked-from possible result value among the possible result values of the new parameter to one or more indicated linked-to parameters contained within the patient information hierarchy; and<br><br>    (f) in response to step (e), within the patient information hierarchy, *linking the indicated linked-from possible result value to the indicated linked-to parameters*, such that the new parameter is a linked-from parameter, and such that, when the new parameter is displayed for a particular patient, if the new parameter has the linked-from possible result value, the linked-to parameters are displayed in conjunction with the new parameter. |

Despite the prolixity of the asserted claim, it recites a very simple invention: a method of organizing medical patient data that is implemented with a general purpose computer. Specifically, it claims the well-understood and routine collection and display of patient data for use in a flowsheet. The "system for designing, under the control of a user, a patient information hierarchy" described in Claim 1, in plain terms, is merely the commonplace idea of fitting patient medical information into a decision tree. This concept was already well known at the time the Patent was filed. *See* '526 Patent at 1:14–29. The background section of the '526 Patent states that "the maintenance of patient information **in physical charts** often has significant disadvantages." '526 Patent at 1:30-31 (emphasis added). To remedy these disadvantages, the '526 Patent takes the idea of compiling patient information into a decision tree and claims its use with a computer, rather than physical charts.

The Federal Circuit has explicitly refused to acknowledge the organization of electronic

information as anything more than an abstract idea.  *Digitech*, 758 F.3d at 1350  ("The method []
claims an abstract idea because it describes a process of organizing information through
mathematical correlations and is not tied to a specific structure or machine.").  In *Digitech*, the
asserted patent was directed to a method for creating "device profiles" which contain and
manipulate spatial and color properties in a digital image processing system.  *Id.* at 1351.
However, the Court held that because the "device profile" claims merely claimed the
organization of data – not machines or other tangible elements – the claimed concept was patent
ineligible as an abstract idea.  *See id.*

    Here, as in *Digitech*, Claim 1 of the '526 Patent is directed solely to the abstract idea of
organizing information and is not tied to a specific structure or machine.  This process of
organizing medical data has been around for years and is not a novel concept.  For example, even
the cover page of the '526 Patent references numerous issued U.S. patents directed to medical
data management dating back to 1972.  *See, e.g.,* U.S. Patent No. 3,872,448.  Tellingly, the
patent itself does not state that the mechanisms by which the claimed maintenance take place are
novel.  Instead, the '526 Patent states that "existing alternatives for automating the maintenance
of patient information fall into the categories of general-purpose databases and rigid patient
information databases."  '526 Patent at 1:40-42.  Therefore, it follows that the inventors of the
'526 Patent considered their supposedly patent-eligible concept to be a method of organizing
data by utilizing the existing capabilities of general-purpose computers. Recent Supreme Court
precedent is decidedly clear that these types of fundamental concepts must be identified as
"abstract ideas."  *See Alice*, 134 S. Ct. at 2357 (holding that the concept of intermediated
settlement is a fundamental economic practice that qualifies as an "abstract idea" beyond the
scope of § 101).

**B.     The Language of Claim 1 Does Not Meaningfully Limit the Abstract Idea to a Concrete Application**

Once an abstract idea is identified, the court must then examine the elements of the claim to determine whether it contains an "inventive concept" sufficient to "transform" the claimed abstract idea into a patent-eligible application.  *See Alice*, 134 S. Ct. at 2357.  Simply taking an abstract idea and adding steps—or breaking it into steps—that involve "well-understood," "routine," or "conventional" activity contributes nothing inventive to an otherwise abstract idea, leaving only the abstract idea as the subject matter of the claims.  *See id.* (discussing *Mayo*, 132 S. Ct. at 1294, 1299); *see also Parker v. Flook*, 437 U.S. 584, 590 (1978).

As noted above, the '526 Patent covers the abstract concept of organizing medical information.  To accomplish this, Claim 1 describes "a method in a computer system for designing, under the control of a user, a patient information hierarchy[.]"  '526 Patent at Claim 1. However, the patent does not provide any indication that a special purpose computer or processing device would be integral to the contemplated data organization process.  The '526 Patent has 21 pages of figures, but none of them diagrams any special purpose computer or shows any software decision logic.  Instead, the figures depict a "general-purpose computer system" ('526 Patent at 2:23-25) with generic components like "CPU," "memory," "keyboard," and "display" ('526 Patent at Fig. 1). The patent provides no detail regarding the hardware components or software of this vague and generic computer system.

The addition of this "general purpose computer" does nothing to salvage the patent ineligible concept described in the '526 Patent.  The Supreme Court's recent §101 jurisprudence makes clear that engrafting general-purpose computing components onto abstract ideas does not make those ideas patent-eligible.  Specifically, in *Alice*, the Supreme Court reaffirmed its prior holding in *Benson* that "merely requiring generic computer implementation fails to transform

that abstract idea into a patent-eligible invention." 134 S. Ct. at 2352.  Here, as in *Alice*, the generic "computer system" components recited in the preamble of Plaintiffs' claims does not meaningfully limit them any more than the general purpose computer did in *Alice*.

Further, the '526 Patent's addition of steps implementing the method in a computer system to allow for flexible organization of stored data does not add any novel, inventive concept whatsoever, let alone an amount sufficient to make the Asserted Patents pass the threshold requirement of 35 U.S.C. § 101.  Such computer-driven steps are "well-understood, routine, conventional ... or obvious," and therefore do not make the claim patentable.  *Mayo*, 132 S. Ct. at 1299 (quoting *Flook*, 437 U.S. at 590) (internal quotations omitted).  The only non-human action involved in Claim 1 of the '526 Patent occurs when the computer system has "receiv[ed] an instruction from the user" and is acting to process the instruction to output a result.  The steps of "receiving an instruction," "creating a new parameter," "specifying the indicated result," and "linking" do not add any meaningful limitations because they are merely processing steps inherent in any effort to analyze medical data using a computer.  '526 Patent, Claim 4.  As the Federal Circuit has explained, "mere data-gathering steps" cannot make an otherwise unpatentable claim patentable.  *Cyberfone Systems LLC v. CNN Interactive Group, Inc. et al*, 2014 WL 718153, at *2 (Fed. Cir. 2014) ("[T]he idea of collecting information in classified form, then separating and transmitting that information according to its classification, is an abstract idea that is not patent-eligible."); *CyberSourc*e, 654 F.3d at 1370 ("We have held that mere data-gathering steps cannot make an otherwise nonstatutory claim statutory.") (alterations omitted) (quoting *In re Grams*, 888 F.2d 835, 840 (Fed. Cir. 1989)).

Finally, the '526 Patent contemplates that the claimed method can be implemented by a human being.  *See* '526 Patent at 3:24-26 ("The facility enables users to add, modify, and

rearrange global or local patient information parameters that make up the hierarchy"). In fact, Claim 1 of the '526 Patent describes "a method in a computer system for designing, **under the control of a user**, a patient information hierarchy." (emphasis added). The inventive features of Claim 1 merely operate to implement this human ("user") control to produce a resulting output which is then displayed to the user. Simple actions, such as this, that can be performed by human beings without the use of any inventive special-purpose hardware or software, are as a matter of law unpatentable abstract ideas. *See, e.g.*, *Benson*, 409 U.S. at 72; *Bilski*, 130 S. Ct. at 3230; *Mayo*, 132 S. Ct. at 1294; *see also Clear with Computers*, 2014 WL 923280 at *1, *4 (ruling that claims directed to a "system which facilitates sales from an inventory of the selling entity," were unpatentable because the independent claim could be "performed entirely by a human, mentally or with pencil and paper").

The Federal Circuit has repeatedly held that these types of "mental processes" are not patentable, whether they are completed manually, or require computer implementation. *Bancorp*, 687 F.3d at 1278. As a result, Claim 1 of the '526 Patent should not be considered patent-eligible solely based on the recitation of a "computer system" to perform some processing tasks which could easily be performed manually.

### C.    Claim 1 Fails The Machine-or-Transformation Test

In addition to the analysis described above, courts often look to the machine-or-transformation test as "an investigative tool" to assess patent eligibility of method claims. *Bilski*, 130 S. Ct. at 3227. Under this test, a process is patentable if "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Id*. at 3225-26. Claim 1 of the '526 Patent fails both prongs of the machine-or-transformation test because the recitation of a general purpose "computer system" does not tie the claims to a particular machine or transform an article into a different form.

A claim does not satisfy the machine prong of the machine-or-transformation test ("MOTT") if the claim as a whole reveals that it only calls for a general purpose computer to perform the abstract idea. *See Clear With Computers*, 2014 WL 923280, at * 6 (affirming the district court's ruling that a general purpose computer does not satisfy the machine prong of the MOTT) (citing *Bancorp Services, LLC v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1273, 1278 (Fed. Cir. 2012)); *see also OIP Techs., Inc. v. Amazon.com, Inc.*, 2012 WL 3985118, at *13 (N.D. Cal. Sept. 11, 2012) ("[M]erely identifying general machine elements does not satisfy the MOTT; were that so, virtually any use of devices beyond the human body for a claimed method would satisfy the test."). Here, nothing in Claim 1 distinguishes the recited technology components ("computer system") from their general use. In particular, Claim 1 does not "specify how the [computer system is] specially programmed to perform the steps in the patent." *Dealertrack*, 674 F.3d at 1333. Instead, the specification of the '526 Patent merely states that "FIG. 1 is a high-level block diagram of the **general-purpose computer system** upon which the facility preferably operates." '526 Patent at 2:23-25 (emphasis added). As illustrated above, the recited actions can just as easily be performed by a human. "Using a computer to accelerate an ineligible mental process does not make that process patent-eligible." *Bancorp*, 687 F.3d at 1279. Therefore, Claim 1 fails the machine prong of the machine-or-transformation test.

"[M]ere manipulation or reorganization of data . . . does not satisfy the transformation prong." *Cybersource*, 654 F.3d at 1375. Here, Claim 1 merely organizes medical patient information for use or display in flowsheets that are the result of bringing together a compilation of preexisting information from many sources. In other words, the result of the claimed process is nothing more than the sum of its parts. For this reason, Claim 1 also fails the transformation

prong.

**2.    The Court Should Dismiss Claims 2-25 of the '526 Patent for Failure to State a Claim**

Claims 2–25 of the '526 Patent are directed to the abstract idea of organizing patient medical information into a decision tree, and they each lack any limitations restricting this idea to a concrete application.  As such, they are invalid under § 101 for the same reasons as Claim 1.

Like Claim 1, these claims are each directed to a method for designing a patient information hierarchy.  *See* '526 Patent Claims 2–25.  Like Claim 1, these methods involve receiving instructions from a user regarding a parameter in a hierarchy and processing the parameter at the direction of the user.  *Id.*  And, like Claim 1, the remaining claims implement this method using a general-purpose computer that is insufficient to render the claims valid.  *Id.* Claims 2–25 do not require a special purpose computer or special software-decision logic. Instead, they require steps such as "display the parameters," "set the predetermined result values," and "storing the predetermined result values" (*e.g.*, '526 Patent Claim 10), which add no meaningful limitations—they are merely generic processing steps that can be performed by a general purpose computer.

Like Claim 1, Claims 2–25 each use a general purpose computer to accelerate a mental process, and merely organize medical patient information without any alteration.  Accordingly, these claims fail both prongs of the machine or transformation test for the same reasons as Claim 7.

As a result, this Court should find all claims of the '526 Patent invalid under § 101.

3.      **The Court Should Dismiss Claim 6 of the '451 Patent for Failure to State a Claim[7]**

Much like Claim 1 of the '526 Patent, Claim 6 of the '451 Patent is directed to an abstract idea and does not contain any meaningful limitations that restrict the abstractness of the claimed method to an actual concrete application.  As such, Claim 6 is also invalid under § 101.

A.      **Claim 6 of the '451 Patent Claims a Method for the Abstract Idea of Storing User-Defined Formulas**

The '451 Patent is generally directed "to the field of medical data processing" ('451 Patent at 1:14-15) — and more specifically, to methods in a computer system for constructing formulae for processing medical data.  *Id.* at 1:44-45.  For ease of reference, Claim 6 is reproduced below:

| **'451 Patent, Exemplary Claim 6** | |
|---|---|
| Claim 6 | A method in a computer system for constructing, in response to user interface interactions by a user using a window-based user interface, a formula for deriving a medical conclusion from one of a plurality of time-indexed medical data inputs, the time-indexed medical data inputs each having events, the events each having multiple data components including a time, the method comprising the steps of: |
| | *receiving input* via the window-based user interface identifying a time-indexed medical data input upon which the formula is to be based; |
| | *receiving via the window-based user interface an instruction* identifying a time interval qualifying the events of the identified time-indexed medical data input; |
| | *receiving via the window-based user interface an instruction* identifying a selection function for selecting one event from the events of the time-indexed medical data input qualified by the identified time interval; |
| | *receiving via the window-based user interface an instruction* identifying a data component of each event of the time-indexed medical |

---

[7] As noted above, in footnote 3, for purposes of this motion, the independent claims of the '451 Patent are substantially similar to Claim 6, and should be invalidated for the same reasons.   Further, the dependent claims fail to add any limitations that would render the claims valid. Accordingly, Defendants treat Claim 6 as exemplary of the other claims of the '451 Patent.

|  | data input; and |
|  | *storing a formula* for applying the identified selection function to events of the identified time-indexed medical data input whose effective times are within the identified time interval in order to select one of the events, and for extracting the identified data component of the selected event, |
|  | such that the formula may be used to derive and display a medical conclusion from the identified time-indexed medical data input. |

The '451 Patent recites "**a method in a computer system for constructing**, in response to user interface interactions by a user using a window-based user interface, **a formula** for deriving a medical conclusion." '451 Patent Claim 6 (emphasis added). The commonplace and routine exercise of constructing mathematical formulas is the backbone of entire fields of study, from chemistry to physics to mathematics. In healthcare, the entire practice of medicine depends on clinicians "deriving . . . medical conclusion[s]" from data inputs (time-indexed and otherwise).

While the preamble of the '451 Patent recites a "method . . . for constructing," the claimed elements provide nothing beyond a computer receiving and storing information from a user. Indeed, the preamble specifically states that the computer system acts "in response to the user interface interactions by a user using a window-based user interface." The only non-human initiated operation is that of "**storing a formula,**" which occurs after **the user** constructs the specific formula and inputs the formula into the computer system. This understanding is supported by the specification of the '451 Patent, which recites that "[t]he facility **presents the user with an intuitive and comprehensive visual interface for constructing a formula** for processing such input parameters." '451 Patent at 1:47-50 (emphasis added). Ultimately it is the user, rather than the computer, who constructs the formula. Therefore, Claim 6 is directed solely to "storing" user-constructed formulas, rather than performing any computational tasks to

generate formulas.  As a result, Claim 6 of the '451 Patent is directed to the abstract idea of storing user-constructed formulas.

The law on this matter is unmistakably clear.  Simple calculations that can be performed by human beings, without the use of any inventive, special-purpose hardware or software, are as a matter of law unpatentable abstract ideas.  *See, e.g.*, *Benson*, 409 U.S. at 72; *Bilski*, 130 S. Ct. at 3230; *Mayo*, 132 S. Ct. at 1294; *see also Clear with Computers*, 2014 WL 923280 at *1, *4 (ruling that claims directed to a "system which facilitates sales from an inventory of the selling entity," were unpatentable because the independent claim could be "performed entirely by a human, mentally or with pencil and paper").  All of the steps of the method recited in Claim 6 of the '451 Patent "can be performed by human thought alone," or by a person with a pad of paper. *CyberSource*, 654 F.3d at 1372.  Therefore, Claim 6 is an impermissible attempt to monopolize the "basic tools of scientific and technological work" by "patent[ing] the use of human intelligence."  *Id.* at 1371-73 (citations omitted).  As a result, Claim 6 of the '451 Patent should not be considered patent-eligible solely based on the recitation of a "computer system" to perform some abstract storing task which could easily be performed manually.

### B.   The Language of Claim 6 Does Not Meaningfully Limit the Abstract Idea to a Concrete Application

Much like the Claim 1 of the '526 Patent, Claim 6 of the '451 Patent provides no meaningful limitation or inventive concept to salvage the otherwise abstract idea of storing user-defined formulas.  Specifically the steps of "receiving input," "receiving … an instruction," and "storing a formula" (Claim 6 of the '451 Patent) do not add any meaningful limitation because they are merely processing steps inherent in any effort to analyze user input using a computer. As the Federal Circuit has explained, "mere data-gathering steps" cannot make an otherwise unpatentable claim patentable.  *Cyberfone Systems*, 2014 WL 718153 at *2  ("[T]he idea of

collecting information in classified form, then separating and transmitting that information according to its classification, is an abstract idea that is not patent-eligible."); *CyberSourc*e, 654 F.3d at 1370 ("We have held that mere data-gathering steps cannot make an otherwise nonstatutory claim statutory.") (alterations omitted) (quoting *In re Grams*, 888 F.2d 835, 840 (Fed. Cir. 1989)).

Further, the preamble's recitation of "a method in a computer system" has no effect on the § 101 analysis of Claim 6. Though Claim 6 references the use of a "computer system," the claim does not identify or claim any new software or computer technology. Similarly, the specification of the '451 Patent does not indicate that any of the hardware or software components used to implement the claimed method are special-purposes computers. Instead, the '451 Patent shows "a high-level block diagram of the **general-purpose computer system** upon which the facility preferably operates" without any meaningful description. '451 Patent at 2:61-63 (emphasis added); Fig. 1.

The role of the computer in Claim 6 is limited to the basic functions of a generic computer, including receiving instructions and storing input data. However, as previously discussed, "merely requiring generic computer implementation fails to transform that abstract idea into a patent-eligible invention." *Id*. at 2352. Here, as in *Alice*, the generic "computer system" components recited in the preamble of Claim 6 of the '451 Patent does not meaningfully limit them any more than did the general purpose computer in *Alice*.[8]

### 4.     The Court Should Dismiss Claims 1-5 and 7-14 of the '451 Patent for Failure to State a Claim

Claims 1-5 and 7-14 of the '451 Patent are directed to the abstract idea of storing user-

---

[8] Defendants note that the analysis of the "machine or transformation" test with respect to Claim 1 of the '526 Patent is substantively identical to that for Claim 6 of the '451 Patent. Therefore, in the interest of efficiency and avoiding redundant arguments, Defendants will not repeat the analysis here.

constructed formulas, and they each lack any limitations restricting this idea to a concrete application.  As such, they are invalid under § 101 for the same reasons as Claim 6.

Like Claim 6, Claims 1-5 are each directed to a method for "constructing … a formula" in response to inputs received from a user, and claims 7-14 are each directed to an "apparatus" that performs such a method.  *See* '451 Patent Claims 1-5, 7-14.  And, like Claim 6, Claims 1-5 and 7-14 implement this method using a general-purpose computer that is insufficient to render the claims valid.  They do not require special purpose hardware or special software-decision logic.  Instead, they require steps such as "display" and "store" (*e.g.*, '451 Patent Claims 3, 10), which add no meaningful limitations—they are merely generic processing steps that can be performed by a general purpose computer.

As a result, this Court should find all claims of the '451 Patent invalid under § 101.

## IV.   CONCLUSION

Because the asserted claims do not embrace patent-eligible subject matter under 35 U.S.C. § 101, Defendants respectfully request their motion to dismiss Plaintiffs' case be granted.

Dated:  October 2, 2014

Respectfully submitted,

/s/ John M. Jackson
John M. Jackson
Texas Bar No. 24002340
jjackson@jw.com
Matthew C. Acosta
Texas Bar No. 24062577
macosta@jw.com
Blake T. Dietrich
Texas Bar No. 24087420
bdietrich@jw.com
**JACKSON WALKER L.L.P.**
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone: (214) 953-6000

**ATTORNEYS       FOR       DEFENDANT
MERIDIANEMR, INC., HEALTHTRONICS,
INC., AND ALTARIS CAPITAL PARTNERS,
LLC**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document via the Court's

CM/ECF system per Local Rule CV-5(a)(3) this 2nd day of October 2014.

*/s/ John M. Jackson*
John M. Jackson