**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| UNILOC USA INC. et al. | |
| Plaintiffs, | C.A. No. 6:14-cv-00625<br>Consolidated |
| v. | |
| E-MDS, INC., et al. | |
| Defendants. | **JURY TRIAL DEMANDED** |

## E-MDS, INC.'S OPPOSITION TO UNILOC'S MOTION TO COMPEL

Defendant e-MDs, Inc. ("e-MDs") files this opposition to Plaintiffs Uniloc USA, Inc. and Uniloc Luxembourg SA's ("Uniloc" or "Plaintiff") motion to compel.

### I.  INTRODUCTION

There is no dispute here.  e-MDs met and conferred with Uniloc and agreed in good faith to produce all of the documents requested subject to the reasonable objections set out in this Court's discovery order. The parties did not reach an impasse during the meet and confer process.  Uniloc's filing is therefore in violation of Local Rule CV-7(h) and, for that reason, should not be considered.  Nonetheless, Uniloc's only complaint, even now, is that e-MDs is not producing documents as quickly as Uniloc demands. To the contrary, e-MDs has actively worked to gather and produce all nonprivileged, relevant and responsive documents by the deadline in the scheduling order for the substantial completion of document production, and it has produced over 11,500 pages of documents since October 23, 2015.  e-MDs is actively supplementing its interrogatory responses.  In fact, Uniloc's true motivation for this motion was made clear in its first brief, which included a blatantly false ad hominem attack on <u>counsel</u>

1

for e-MDs, the falsity of which was so clear that Uniloc had to file an "amended" (i.e., corrected) motion.

## II.  STATEMENT OF FACTS

Uniloc's description of the "facts" behind its motion to compel bears so little resemblance to reality that it might have been written in a parallel universe. But more importantly for the Court's consideration of this motion is that the "facts" stated provide no guidance to the court on the specific discovery Uniloc seeks or the reasons it believes it requires the discovery.  Indeed, there can be no question that the entirety of the statement is designed to serve no purpose other than to cast e-MDs in an unfavorable light.  If there could have been any question about that, it was quickly laid to rest by Uniloc's decision to include in its summary of "facts" a blatantly false and malicious personal attack on <u>counsel</u> for e-MDs (not e-MDs itself) in the first version of its motion.[1]  The attack was so obviously false and so negligently researched that, when confronted with the actual facts, Uniloc was forced to file an "amended" brief to remove the falsehood.[2]  Thus, although Uniloc's stated "facts" seem entirely irrelevant to the point of its motion, e-MDs feels compelled to correct the record.

**A.     e-MDs' Rule 3-4(a) Disclosures Satisfied the Rules**

e-MDs' disclosure of technical documents pursuant to Rule 3-4(a) was due on March 13, 2015.  At that time, the company was enmeshed in an acquisition and merger that fully occupied every person who would have been expected to assist in gathering the documents required for the disclosure.  (Daniels Decl. at ¶3).  In fact, during this period, the General Counsel of e-MDs,

---

[1] In its "unamended" initial brief, Uniloc falsely asserted that <u>counsel</u> for e-MDs had missed a deadline while representing a different defendant in another case before this Court.  In truth, the very brief Uniloc cited for this claim made clear that the party that missed the deadline was represented by different counsel entirely.  The client represented by counsel for e-MDs had been dismissed months before the cited brief was filed.  Although Uniloc deleted the malicious falsehood when it was brought to their attention, Uniloc chose not to explain to the Court why it needed to "amend" its brief.

[2] Daniels Decl. Ex. A, E-mail from Daniels to Uniloc Counsel, 10/24/15.

who had been the primary point of contact for the case, left the company and was not replaced. (Daniels Decl. at ¶3). As a result, e-MDs was not prepared to produce materials on March 13, 2015.  e-MDs regrets missing the deadline and intended no disrespect in doing so. Following that date, counsel for e-MDs conferred in good faith with Uniloc's counsel, explained the circumstances, and agreed to work diligently to make the required disclosure.  (Daniels Decl. ¶3-4).  They did so.

On April 2, 2013, e-MDs made its Rule 3-4(a) disclosure. Uniloc is correct that the disclosure comprised four documents, but omits the fact that those four documents were the complete user's manuals for all of the accused products in the case. They consisted of well over a thousand pages of detailed information about the operation of the accused products.  (Daniels Decl. ¶5).  Short of source code—which Uniloc has not sought to review even now—these documents were the most complete and comprehensive description of the functionality of the products available.

Uniloc seemed to agree.  After the production of these user's manuals, Uniloc went completely silent for well over **five months**.  Uniloc did not assert that e-MDs Rule 3-4(a) disclosures were insufficient, and it did not contact e-MDs seeking any additional information. Indeed, in July, Uniloc served supplemental infringement contentions, citing extensively to the documents produced with e-MDs Rule 3-4(a) disclosures.  Yet, Uniloc did not raise a single issue with the adequacy of e-MDs' disclosures, either prior to this supplementation or for months after it. (Daniels Decl. ¶7).  e-MDs thus had no reason to think Uniloc believed its Rule 3-4(a) disclosures were inadequate or incomplete or that it had missed any of the renewed scheduling deadlines with respect to these disclosures.  Uniloc's attempts to rewrite history now about the adequacy of e-MDs's disclosures simply do not ring true.

3

**B.**     **The Only Discovery-Related Communications Following e-MDs' Rule 3-4(a) Disclosures Were *e-MDs'* Repeated Requests to Uniloc, Which Uniloc Ignored**

Indeed, it is highly significant that the <u>only</u> discovery-related communications between e-MDs and Uniloc following e-MDs' Rule 3-4(a) disclosures in April were e-MDs' repeated requests that Uniloc produce prior licenses to the patents-in-suit—requests that Uniloc **completely ignored** for six months.  For example, in the March 20, 2015 meet and confer, e-MDs asked Uniloc when it intended to produce the existing licenses to the patents-in-suit.  (Daniels Decl. at ¶6).  Counsel for Uniloc agreed to follow up.  (Daniels Decl. at ¶6).  Counsel for e-MDs reiterated its request for licenses in writing on at least four occasions and several times by phone over the ensuing months.  (Daniels Decl. at ¶6, Ex. B and C, e-mails from Beasley to Etheridge and Loveless, dated April 29, May 11, May 18 and May 21, 2015).  Uniloc did not deign even to acknowledge receipt of these communications, and allowed over six months to pass before producing a single license (which occurred, ironically, on September 11, 2015, less than two weeks before Uniloc sent its letters demanding e-MDs supplement its discovery).

**C.**     **Uniloc's Rush to File Its Motion to Compel**

Moreover, even with respect to its first communication regarding discovery at the end of September, Uniloc demonstrated the same disregard for the Local Rules and professional courtesy that it shows in filing this motion without properly conferring.  **Less than two hours** after Uniloc sent e-MDs two letters regarding discovery issues on September 22, 2015, Uniloc also moved for entry of default against e-MDs, without so much as picking up the phone to inform e-MDs that it believed e-MDs had missed the deadline to answer after the Court granted in part e-MDs' motion to dismiss.  Then, when counsel for e-MDs immediately contacted Uniloc counsel to discuss the clerical error that resulted in e-MDs' missing the filing deadline, counsel

4

for Uniloc refused to withdraw its request for entry of default unless e-MDs agreed to provide all of the discovery demanded in Uniloc's letters of that day by October 13, 2015.  Despite the extortionate nature of the demand, e-MDs has always intended to comply in good faith with the rules governing discovery, so counsel for e-MDs agreed to work in good faith to try to address any true deficiencies in its productions by October 13, 2015.  Counsel for e-MDs did so. (Daniels Decl. at ¶7-8).

On October 13, 2015, it had become clear that the process of identifying and collecting documents was more complicated than e-MDs had appreciated, so counsel for e-MDs wrote to counsel for Uniloc and stated that the company was working to produce documents but that production likely would not begin until the end of the following week—in other words, October 23, 2015.  Rather than wait for this production, however, Uniloc rashly filed this motion to compel.  Just two days later, e-MDs began its supplemental production of documents on October 23, 2015, as promised.  (Daniels Decl. at ¶9).  Since that date, e-MDs has produced over 11,000 pages of documents and—although Uniloc has never requested it—has offered to make its source code available for inspection.  e-MDs is actively supplementing its interrogatory responses and expects to serve supplemental responses in the next two weeks.  Notably, Uniloc filed its motion less than a month after first contacting e-MDs regarding alleged discovery deficiencies and less than 20 days after the parties conferred by phone to attempt to focus on the discovery Uniloc actually needed.  On October 23, 2015, the date for substantial completion of discovery was still a month away.

## D.    Uniloc Failed Adequately to Meet and Confer

As the facts described above demonstrate, Uniloc did not comply with the meet and confer process, and its motion is premature.  A short summary of the events preceding Uniloc's motion makes this clear.  As noted, Uniloc's first and only communication to e-MDs regarding

alleged deficiencies in its discovery responses came in the form of two letters on September 21, 2015 (the same day Uniloc filed a request for entry of default against e-MDs without bothering to pick up the phone or send an email).  e-MDs took the letters very seriously, and began immediately evaluating where supplementation was necessary and the best manner with which to address the issues raised.  The parties promptly met and conferred on the letters on October 2, 2015.  (Daniels Decl. at ¶9).  During that call, the discovery Uniloc contended it required was discussed in detail and counsel for e-MDs agreed to consult with e-MDs and to work diligently to address the issues raised in the call and, where possible and consistent with its reasonable objections, to begin producing supplemental information as soon as feasible.  During the call, counsel for e-MDs noted that e-MDs was still working through the merger process and that this had complicated counsel's efforts to identify the correct persons with whom to work and to determine the most efficient way to obtain the requested information.  As a result, counsel for e-MDs noted that it would be difficult to meet Uniloc's unilateral and arbitrary deadline of October 13, but the call had helped clearly to define the scope of what was being requested and thus that date remained a goal.  (Daniels Decl. at ¶9).

On October 13, 2015, e-MDs was diligently gathering documents and identifying where additional documents could be located, but the documents still had to be transferred to counsel, reviewed, and prepared for production.  Thus, counsel for e-MDs contacted counsel for Uniloc and informed them that the company was working diligently but most likely would not be able to begin production until the end of the following week, on October 23, 2015.  (Daniels Decl. at ¶9, Ex. D, 10/13/15 e-mail from Daniels to Loveless).  Two days later, Uniloc demanded an in-person meet and confer on a motion to compel the following week.  (Daniels Decl. at ¶9, Ex. E, email from Loveless to Daniels).  Lead counsel for e-MDs noted he was traveling and

6

unavailable for an in-person call that week but would agree to meet by telephone or at a later date.  (Daniels Decl. at ¶9, Ex. F, email from Daniels to Loveless).  Counsel for e-MDs also noted that he was puzzled as to why Uniloc was proposing to file a motion to compel e-MDs to do what it had already agreed to do.  Counsel for e-MDs made this point repeatedly as discussions of the meet and confer progressed.  Uniloc refused to confer by telephone and insisted on an in- person conference and insisted that it take place that week.  e-MDs then offered to have lead counsel's partner meet in person.  At that conference, counsel for e-MDs noted that he was unaware that the parties were at an impasse and thus it did not seem a motion to compel was ripe.  Counsel for Uniloc responded (inaccurately) that e-mail correspondence confirmed the parties were at an impasse and that the in-person conference was "just a formality."  Uniloc filed its motion to compel less than 24 hours later.  e-MDs began producing documents, as promised, on October 23, 2015.  (Daniels Decl. at ¶9).  Uniloc itself was still producing documents as late as October 29, 2015 (when it made a production of well over 2,000 pages).

Tellingly, although Uniloc is expected to claim that it confirmed the parties were at an impasse before filing this motion, more than a week <u>after</u> Uniloc filed its "amended" (corrected) motion to compel, Uniloc wrote counsel for e-MDs demanding a meet and confer on the documents related to the acquisition and merger transaction—the **<u>precise same</u>** documents that were the subject of the motion to compel filed the week before.  (Daniels Decl. Ex. G, 11/6/15 e-mail thread between Loveless and Daniels.)  This obviously begged the question:  If the parties were at an impasse and this motion to compel was ripe, how could Uniloc expect to meet and confer on the same documents?  Uniloc thus far has declined to answer this question.  The truth is, e-MDs' counsel has been working diligently with e-MDs and the acquiring entity to determine what there is to produce and to make the production.  Uniloc itself seems to recognize

its motion was improvidently filed and it did not allow the meet and confer process to run its course.

### III.  ARGUMENT

As noted, Uniloc devotes the overwhelming majority of its motion to compel to efforts to cast e-MDs in a negative light.  The motion itself, however, is surprisingly light on substance. With the exception of a few interrogatories to which Uniloc seeks responses (and to which, as noted in detail below, e-MDs is working diligently to provide responses subject to the objections permissible under the Discovery Order and the Local and Federal Rules), Uniloc seems to be seeking an order compelling e-MDs to produce all documents responsive to Uniloc's extensive requests for production, in addition to all other relevant documents.  This wide-ranging request for relief provides no guidance to the Court or to e-MDs regarding the discovery Uniloc actually believes it is missing or, more importantly, that it needs to prosecute its case.  In contrast, the parties exchanged quite detailed lists of document categories to be pursued, and e-MDs has been making serious efforts to locate and produce any non-privileged documents in its possession, custody or control within those categories.  In its "amended" motion, made necessary by the need to remove the obviously false attack on counsel, Uniloc was forced to deal with the fact that e-MDs had produced thousands of pages after its initial, flawed motion was filed, as e-MDs had promised to do.  Uniloc simply waves its hands and tries to sweep aside the thousands of pages e-MDs had already produced with vague generalities that fail utterly to encompass what had been produced.  Moreover, since that time, e-MDs has produced an additional 8,300 pages of documents, all of which were gathered in direct response to the specific categories of documents discussed in the meet and confer process.  It is thus extremely difficult to determine what, in fact, Uniloc seeks with its motion, but e-MDs will address the motion to the best of its abilities.

**A.      As Indicated in the Incomplete Meet and Confer, e-MDs Will Provide Supplemental Responses to the Interrogatories on Which it Relied on Rule 33(d)**

As is clear from Uniloc's motion, the interrogatories as to which e-MDs relied on Rule 33(d) were interrogatories that were not amenable to a textual response and that clearly were most efficiently answered through documents: testing reports, revenue information, certification documents, etc. Uniloc does not seem to dispute this point. As noted, however, e-MDs began producing documents that included documents responsive to these interrogatories on October 23, 2015, two days <u>after</u> Uniloc filed its motion seeking to compel responses citing to produced documents. Needless to say, up to that point, other than the technical documents produced, there were no documents to cite in these interrogatory responses. Now that documents have been produced, e-MDs will supplement these responses as appropriate with citations to produced documents. To avoid multiple supplementations, e-MDs proposes providing these supplemental responses within two weeks after the November 23, 2015 date for the substantial completion of document production. This will be five months before the May 12, 2016, deadline for letters regarding potential dispositive motions and nearly six months before the May 31, 2016, deadlines for the close of fact discovery and expert disclosures. However, e-MDs defers to the Court with respect to the timing of its supplementation.

**B.      e-MDs will Provide A Response to Uniloc's Contention Interrogatory Regarding Noninfringement**

Uniloc moves to compel e-MDs to respond to its interrogatory seeking e-MDs' noninfringement contentions. Several things are noteworthy about this aspect of Uniloc's motion. First, in response to interrogatories seeking its contentions regarding the alleged validity of the patents-in-suit, Uniloc has also objected to such interrogatories as premature. For example, in response to GE Healthcare's interrogatory seeking its contentions regarding the patentability of the claims that remain after the Court found a number of the asserted claims

9

invalid as unpatentable subject matter, Uniloc presented **four pages** of a laundry list of objections and then "responded" as follows:

> In the event that the Court allows GE to present evidence in support of an affirmative defense under § 101 for the claims in question, Uniloc will provide information sufficient to rebut any such defense (e.g., through rebuttal expert report(s)); and Uniloc will supplement its response to Interrogatory No. 1 accordingly.

(Daniels Decl. Ex. H, Uniloc Objections and Response to GE Interrogatory No.1).  In other words, Uniloc refused to provide a response to the interrogatory until after the Court rules on the letters requesting leave to file dispositive motions—**in May 2016**.  And even then, Uniloc asserts it will only respond "**through rebuttal expert report(s)"** (emphasis added).  Uniloc asserts this response despite the fact that the Court has already held that "the Defendants may re-raise § 101 arguments with respect to the remaining claims after claim construction and may rely on any evidence produced during discovery."  (Dkt. 315).  For Uniloc to move to compel a contention interrogatory response from e-MDs in light of its own positions on the timing of contention responses is almost comically hypocritical.

Second, it appears that all of the defendants in these consolidated cases similarly objected to providing noninfringement contentions prior to expert discovery.  However, Uniloc has moved to compel this response <u>only</u> from e-MDs, rather than from some of the much larger defendants in the consolidated cases.  The reasons for Uniloc taking completely inconsistent positions with respect to its own discovery responses and with respect to those of other Defendants give room for speculation.

Finally, e-MDs did not plead noninfringement in this case until it filed its answer on September 25, 2015, <u>after</u> Uniloc sent e-MDs a letter demanding the response to this interrogatory.  Thus, e-MDs had not yet taken a position on noninfringement because it had a

pending motion to dismiss based on the unpatentability of the patents-in-suit, which was granted in part, and the interrogatories were not yet ripe.

Nonetheless, e-MDs is willing to provide a response to this interrogatory when appropriate.  It has been common practice in e-MDs' experience for the parties to agree on a mutual date for exchanging responsive contentions, with the plaintiff providing validity contentions and the defendant providing noninfringement contentions.  e-MDs proposes such a mutual exchange with Uniloc on a mutually agreed upon deadline.  However, e-MDs defers to the Court on the timing of its supplementation.

C. **Uniloc Misrepresents Controlling Law on the Burden of Pleading and Proving Marking, but e-MDs will Supplement Its Response on the Section 287 Interrogatory**

Uniloc's discussion of the burden of proof on marking under 35 U.S.C. § 287 is so strikingly disingenuous that it appears to violate the ethical requirement to cite controlling authority contrary to one's own position.  Texas Disc. R. Prof. Cond. 3.03(4).  Uniloc contends that e-MDs bears the burden of coming forward with some evidence of a need to mark before Uniloc is required to meet its burden of proving marking.  While some courts have so held, the Eastern District of Texas is not one of them.  This court adheres to the rule that a patentee bears the burden of <u>pleading and proving</u> marking and that summary judgment is appropriate if the patentee fails to do so.  *See, e.g., PACT XPP Techs., AG v. Xilinx, Inc.,* 2012 U.S. Dist. LEXIS 40651 (E.D. Tex. Mar. 26, 2012) ("The Federal Circuit has held that a patentee's failure to comply with the marking statute is not a defense to patent infringement, but is instead a limitation on the patentee's recovery of damages when it fails to plead and prove compliance with the marking statute"); *Mass. Inst. of Tech. v. Abacus Software, Inc.*, 2004 U.S. Dist. LEXIS 30052, 25-26 (E.D. Tex. Aug. 4, 2004).

Rather than cite this controlling authority directly contrary to its argument, however, Uniloc cites cases from the Central District and Northern District of California, which follow the contrary rule. (Uniloc Br. at 9 n. 14).  Indeed, in *Sealant Systems International, Inc. v. TEK Global S.R.L.*, 2014 WL 1008183, \*109-111 n. 222 (N.D. Cal. 2014), which Uniloc cites for support, the Northern District of California **cites this Court's *PACT* case as contrary authority**.  Uniloc thus cannot claim it was not on notice that the cases it was citing were contrary to the law that controls this case.  Moreover, the lone Eastern District of Texas case that Uniloc cites in this section is consistent with the other controlling authority from this District.  In *CoreLogic Info Solutions, Inc. v. Fiserv, Inc.*, 2012 WL 4635994 (E.D. Tex. Sept. 29, 2012), the patentee presented affirmative evidence in opposition to a summary judgment motion on marking that its product was kept secret and never sold and thus not required to be marked.  In fact, contrary to the implication Uniloc attempts to create, the Court does not, in the *CoreLogic* decision, address burden of proof at all, but its reasoning makes clear that the burden remained with the patentee throughout.  Thus, Uniloc's argument that e-MDs is required to respond to Uniloc's marking interrogatory even where Uniloc has not, and apparently cannot, plead or prove marking, is simply false.[3]

Nonetheless, now that Uniloc has at last produced the prior licenses to the patents-in-suit, e-MDs will supplement its response to this interrogatory to render it irrefutable that Uniloc cannot recover presuit damages absent actual notice under Section 287.  The patents-in-suit have been extensively licensed, by Unioc's predecessors and by Uniloc itself, and none of these licenses include a requirement that the licensee mark the license products with the patent numbers.  It is quite clear that Uniloc cannot meet its burden of showing that these licensees have

---

[3] It should be noted that in its complaint, Uniloc did plead marking "on information and belief," but in response to discovery on this point, Uniloc asserted it was still "investigating" marking by licensees.  There was thus no "information and belief" upon which this pleading could have been based.

voluntarily marked their products with the patent numbers and therefore any assertion by Uniloc that it is entitled to presuit damages based on consistent and continuous marking by it and its licensees would be put forth in violation of Rule 11. *Soverain Software L.L.C. v. Amazon.com, Inc.*, 383 F. Supp. 2d 904, 908 (E.D. Tex. 2005) (holding that defendant's demonstrating the existence of licenses justified summary judgment where plaintiff failed to provide evidence that licensees marked).

**D.     e-MDs Has Produced Documents Indicating Why Its Customers Have Chosen e-MDs' Products, Which Are Responsive to the Market Demand Interrogatory**

Uniloc's interrogatory regarding drivers of market demand for its products "other than certification" is extremely vague and ambiguous and therefore difficult to answer.  The products Uniloc has accused here across all the defendants all appear to have certifications.  Therefore, no customer chooses one company's product over the other based on its certification status because all of the products meet this factor.  Specific market demand for e-MDs' products must therefore by definition be driven by factors other than certification.  Thus, an accurate answer to the interrogatory appears to be that everything a customer bases its decision on drives market demand and certification is not one of those factors.

Nonetheless, e-MDs has produced to Uniloc documents reflecting feedback comments from its customers, which all indicate factors influencing market demand.  e-MDs will supplement its interrogatory response with additional facts and will supplement with document cites under Rule 33(d) after its production is substantially complete.

**E.     e-MDs will Provide Supplemental Responses to Interrogatory Nos. 1 and 2**

Uniloc further contends that e-MDs has failed to answer the "basic questions," in interrogatories 1 and 2, which seek identification of e-MDs' certified products and of persons with knowledge.  In its initial responses, e-MDs did, in fact, identify its certified products by

13

reference to the product series to which they belong.  In the meet and confer, Uniloc indicated it wanted confirmation that specific products within those series were certified, and referred e-MDs to a publicly available list of e-MDs' certified products.  e-MDs agreed to supplement its response to Interrogatory No. 1 to confirm that this list is, in fact, accurate.  e-MDs has done so.

With respect to Interrogatory No. 2, which seeks identification of persons with knowledge of the accused products, e-MDs identified Charles Frederick as the person with knowledge of the accused products in its intial disclosures.  Mr. Frederick is still at e-MDs so e-MDs will repeat this information in a supplemental interrogatory response.  Identifying additional persons with knowledge of the accused products has been made complicated by the merger and acquisition, but e-MDs is in the process of identifying additional persons and will supplement this interrogatory.

**F.     e-MDs Has Agreed and is Working to Produce all Relevant, Non-Privileged Documents in its Possession, Custody and Control**

As discussed above, Uniloc's motion with respect to e-MDs document production is simply a broad, unfocused demand for "relevant documents" requested in its requests for production.  e-MDs has never disputed that it is required to produce relevant, nonprivileged, non-work product documents in its possession, custody and control, subject to reasonable objections as described in this Court's discovery order.  e-MDs has been working diligently to make this production.  The parties were not at an impasse when Uniloc filed its motion.  e-MDs has been provided with the list of document categories Uniloc identified as important during the meet and confer process and it has been actively gathering those documents and providing them to counsel for production.  e-MDs has so far produced over 13,500 pages of documents.  e-MDs is continuing to search for responsive documents, and will supplement as and when it locates any.

G.      **e-MDs Has Produced All Relevant Documents from the Marlin Equity Partner Acquisition**

Consistent with e-MDs' commitment to gather and produce relevant documents, e-MDs has produced the parts of the merger agreement that refer to this lawsuit and Uniloc.  While Uniloc would like to believe this lawsuit and its patents played a significant role in the merger discussions, that is simply not the case.  The lawsuit was mentioned in two places in the agreement, where it was identified as one of a number of pending lawsuits as to which the participants to the transaction allocated responsibility.  The certifications attributed to e-MDs products were not mentioned in the agreement.  The remainder of the agreement is highly confidential information of e-MDs and its merger partner and is completely irrelevant to any issue in this case and therefore the likely harm of disclosing it to Uniloc in a case involving many of e-MDs' direct competitors far outweighs the relevance of the information, of which there is none.

e-MDs is working with the bank that housed the data room associated with the transaction to attempt to reestablish access to the materials.  Once this process is complete, e-MDs will search the data room materials for information related to the lawsuit and/or Uniloc's claims.

## IV.  CONCLUSION

Therefore, for the reasons stated above, this Court should deny Uniloc's motion because it was filed prior to the completion of the meet and confer process required by the Local Rules.  However, if the Court decides to hear the motion, the Court should deny it because e-MDs has met and continues to meet its obligations under the Federal Rules and the Local Rules.

Dated: November 12, 2015

Respectfully submitted,

*/s/ Steven R. Daniels*
Steven R. Daniels
State Bar No. 24025318
FARNEY DANIELS PC
800 S. Austin Avenue, Suite 200
Georgetown, Texas  78626
Telephone:  (512) 582-2828
Facsimile:  (512) 582-2829
sdaniels@farneydaniels.com

**Attorneys for Defendant**
**e-MDS, Inc., a Texas corporation**


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).


Dated:  November 12, 2015

*/s/ Steven R. Daniels*
Steven R. Daniels

16